UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:23-CR-58-HAB |
| ) | |
| PETRU-RAZVAN BRUMA, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant Petru-Razvan Bruma ("Bruma"), proceeding pro se, moves to revoke his detention before trial. (ECF No. 64). Bruma contends that he has already served the high-end of the sentencing guideline range for his offenses and alleges various constitutional violations against the Allen and Noble County Jails. (*Id.*). The Court ordered the United States Probation Office to file a preliminary guideline calculation which details Bruma's potential sentence. (ECF Nos. 66, 69). For the reasons below, Bruma's Motion to Revoke Detention (ECF No. 64) will be DENIED.[1]

**I. Background**

On October 6, 2023, a criminal complaint was filed against Bruma alleging Bank Fraud, in violation of 18 U.S.C. §1344, and Trafficking in a Counterfeit Device, in violation of 18 U.S.C.§1029(a)(4). (ECF No. 1). Following Bruma's arrest and initial appearance, United States Magistrate Judge Susan L. Collins held a detention hearing on October 16, 2023, where she determined that "no condition or combination of conditions of release will reasonably assure [Bruma's] appearance as required." (ECF Nos. 11, 12). Pursuant to Magistrate Judge Collins'

---

[1] Despite the filing of Bruma's Notices of Appeal (ECF Nos. 76, 82), this Court is not divested of jurisdiction for the reasons outlined in this Court's Opinion and Order (ECF No. 87).

Detention Order (ECF No. 12), Bruma has remained detained since he was arrested on October 4, 2023.

**II. Legal Standard**

A district court may review a magistrate judge's release or detention order pursuant to 18 U.S.C. § 3145(a). The district court's review is de novo since it must make an independent determination of the proper pretrial detention or conditions for release. *See United States v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985); *see also United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (noting although § 3145 "speaks of 'review' by the district judge, the court may start from scratch"). "[T]his review may be conducted by reviewing the prior record already considered by the magistrate judge and making a fresh finding on a complete record." *United States v. Correa*, 2013 WL 869956, at *3 (C.D. Ill. Mar. 7, 2013) (citing *Torres*, 929 F.2d at 292).

Under the Bail Reform Act of 1984, a defendant may be detained in custody pending trial "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "[A] finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial." *Portes*, 786 F.2d at 764. The judicial officer's conclusion that no conditions of release can reasonably assure the safety of other persons and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). The Government must show by a preponderance of the evidence that no conditions will ensure Defendant's appearance in court. *Portes*, 786 F.2d at 765.

In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, a

2

district court is to consider the factors set forth in § 3142(g): (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves narcotics; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g). If the judicial officer determines that no release conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Bail Reform Act requires: "[T]he judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

### III. Discussion

The Court has carefully reviewed and considered Bruma's Motion, the Government's Response, the Pretrial Services Report, the criminal complaint, the indictment, the evidence and argument presented at the initial detention hearing, and Magistrate Judge Collins' Detention Order. From this information, the Court finds that no conditions of release will reasonably assure the appearance of Bruma as required. The § 3142(g) factors support such a finding.[2]

As for the first factor, the offense Bruma is charged with, even though it did not involve firearms or narcotics, does raise some concerns insofar as fraud is a crime of deception. The Court agrees that more serious crimes exist as Bruma points out. But when assessing the risk of flight, the deceptive nature of his alleged offenses should carry greater weight. And the circumstances of the offense here show that Bruma visited Fort Wayne just to place shimming devices on two ATMs, went to Chicago, came back to Fort Wayne the following day just to visit the same to ATMs before going back toward Chicago. Although the nature and the circumstances of the

---

[2] The factual statements made in this Order are based on the allegations contained in the Complaint and the proffers the parties made. Bruma maintains his presumption of innocence.

offense may seem minor in comparison to large-scale narcotics and gun trafficking, they do demonstrate a propensity toward deception and minimal ties to this District.

As for the second factor—the weight of the evidence against Bruma—there is a point of contention. While the Government argues that the weight of the evidence against Bruma is strong, Bruma argues, in a somewhat conclusory fashion, the opposite and believes the Government lacks considerable evidence establishing the offenses alleged in Counts 1 and 2 of the Indictment. It is worth walking through what the evidence shows up to this point.

Photographic and video evidence shows a suspect that appears to be Bruma at two Flagstar Bank ATMs on October 3, 2023, driving a Chevrolet Malibu bearing a distinct license plate. At both ATMs, the suspect is seen placing shimming devices on the machines and, indeed, a shimming device was recovered from one of the ATMs ("West Jefferson ATM"). Photographic and video evidence shows Bruma return to the West Jefferson ATM the following day—wearing nearly identical clothing and driving the same Malibu as the suspect. Officers pulled the Malibu over as it was leaving Fort Wayne and Bruma was arrested. Bruma was wearing the same hat as the suspect that placed the shimmers the day before and was dressed in similar clothing. Moreover, Bruma possessed the same Visa Card that the suspect inserted in the West Jefferson ATM on October 3, 2023. The suspect on that date placed a red Visa Card into the ATM and bank records show that the card ended in four distinct digits. At Bruma's arrest, officers recovered a red Visa Card baring those digits from his wallet.

The vast majority of Bruma's argument on this point focuses on the lack of evidence on certain elements of the underlying offenses. Count 1 charges Bruma with Bank Fraud:

Whoever knowingly executes, or attempts to execute, a scheme or artifice—

(1) to defraud a financial institution; or

4

> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344. Count 2 charges him with Trafficking in a Counterfeit Device: "Whoever…knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device-making equipment… shall, if the offense affects interstate or foreign commerce, be punished..." 18 U.S.C. § 1029(a)(4).

Bruma's contention that there is zero evidence for "bank fraud", "counterfeit device", "trafficking in a counterfeit device", and the like are conclusory and do not provide much for this Court to mull over (ECF No. 73 at 3). Those statements, without more, are akin to saying, "I didn't do it[,]" and the Court is not inclined to merely take Bruma's word on that point. But there are contentions worth addressing as it relates to Bruma's charges.

For Count 1, Bruma contends that there is zero evidence of "'obtain[ing] any of the moneys, funds, credits, assets, securities, or other property owned by a financial institution" or "false or fraudulent pretenses, representations, and promises." (*Id.* at 3-4). Apart from being mere recitations from the statute, the Government need not prove that Bruma knowingly obtained property through false or fraudulent pretenses, representations, or promises. Bruma can still be liable if the Government proves that he knowingly attempted to accomplish those ends. *See* 18 U.S.C. § 1344. And the criminal complaint established the manner in which those ends could have been accomplished here:

> The FBI has been investigating several reports of skimming devices being placed on bank ATMs throughout the Northern District of Indiana. Based on your affiant's training and experience and information gathered during this investigation, your affiant knows a skimming device is typically placed on a card reader and is disguised to appear to be part of the reader. The skimming device is normally by a

5

>small camera that is aimed at the credit card keypad to capture the card PIN number input by the customer using the ATM. The skimming device is normally placed on the credit card reader for a short period of time. During this time, the skimming device captures and stores the credit card and debit card numbers of individuals using the ATM to which the skimming device is attached. The camera records the victim typing in their card PIN number. After a period of time, the device and camera are removed from the credit card reader. The information captured and stored by the skimming device is then used to produce fraudulent credit cards and debit cards which are then used to obtain goods, services, or currency.

(ECF No. 1). With this in mind, the Government does possess significant evidence as it relates to Count 1.

As it relates to Count 2, Bruma argues that there is "zero evidence" for his "control, custody, and possession of device-making equipment", "counterfeit debit or credit cards", "unauthorized withdrawals of United States currency", and any "potential…[or] actual interstate and foreign commerce affection." (ECF No. 73 at 4-5). "[T]he term "device-making equipment" means any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device[.]" 18 U.S.C. § 1029(e)(6). Based on the information from the criminal complaint, the device that officers obtained from the West Jefferson ATM would be used to make "fraudulent credit cards." (ECF No. 1). And fraudulent credit cards are "access devices." *See United States v. Lyons*, 556 F.3d 703, 708 (8th Cir. 2009) ("A counterfeit credit card is an "access device," because it is a "card . . . that can be used . . . to obtain money, goods, services, or any other thing of value." 18 U.S.C. § 1029(e)(1); *see also id*. § 1029(e)(2) (defining "counterfeit access device" as including "any access device that is counterfeit")). Contrary to Bruma's assertion, there is evidence that he possessed "device-making equipment." And under 18 U.S.C. § 1029(a)(4), the Government need not show any unauthorized withdrawals as an element of the offense.

6

As for interstate commerce, the Court acknowledges that the Government placed little emphasis on that element in its brief. But the record supports that the offense involved interstate commerce. On the date of Bruma's arrest officers knew he left Chicago, Illinois and went straight to Fort Wayne, Indiana, to visit the same ATMs which shimmers were placed on the night before. While the Government may require more to prove this element at trial, not all the evidence is before the Court. The Government must simply prove that Bruma's possession of device-making equipment *in some way* affected interstate or foreign commerce—a task that can be accomplished in many ways. *See United States v. Vance*, 956 F.3d 846, 854 (6th Cir. 2020).

Bruma's remaining arguments are unavailing. He argues there is zero evidence of "any victims" or "any kind of financial loss[,]" but those are not elements of the offenses charged. He also argues that the information obtained from the credit and debit cards' microchips are essentially useless to hackers, citing *Beaman v. Bank of Am., N.A.,* 2023 WL 4784254 (D.N.J. July 27, 2023). Perhaps, that is true as far as it goes. But it does little—if anything—to rebut the Government's evidence that Bruma committed offenses charged in the indictment. All told, there is strong evidence that Bruma violated 18 U.S.C. § 1344 and 18 U.S.C. § 1029(a)(4). This factor thus supports Bruma's continued detention.

The third factor under 18 U.S.C. §3142(g) requires the Court to consider Bruma's history and characteristics. Within this factor, the Court also considers Bruma's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. §3142(g)(3)(A). The Government explains that Bruma has no real ties to this District and the only real ties that he has to this country is a California address he provided to the probation department. Indeed, Bruma is

7

Romanian by birth and a citizen of the United Kingdom. At the time of his arrest on October 4, 2024, Bruma was here illegally as he overstayed his visa. He thus presents a lack of legal status in the United States. There is no record of legal employment for Bruma in the United States and he has significant ties outside of the United States according to the detention hearing. And the Government points out that Bruma refused to discuss his financial status with probation because he believes that information to be "personal."

Bruma does provide some information to alleviate those concerns. He states that he came to the United States to become a commercial pilot and was a student at Van Nuys Flying Academy in Los Angeles, California. According to Bruma, he was thoroughly investigated by various law enforcement agencies as part of that process. As for his immigration status, he claims to have applied for a status adjustment which required him to provide his background and biometrics to other government agencies. And as for his finances, he claims to have paid for flight school with the sale proceeds for his business in the United Kingdom. Bruma even states that he married a United States' citizen and overstayed his visa because he was waiting for his divorce to finalize. Bruma did not provide supporting documentation for these statements. Even still, the Court, with some degree of caution, will take his word for it.

Although these statements provide some context, they do not alleviate all of the concerns. Bruma still has little to no ties to this District, or this community, even assuming that his California address is valid. Although he may have paid for flight school with the proceeds from his business, that does little to explain how he was supporting himself at the time of his arrest. He reports no employment. And he may have overstayed his visa to handle his divorce, but he still lacks legal status. To be clear, this finding has nothing to do with "the incorrect tanning of [his] skin," as Bruma avers. This is not a race or national origin issue. He is facing a potential prison sentence

and deportation. The facts are such that little is still known about Bruma, and he presents more reasons to flee than most. This is all the more true considering the deceptive nature of his alleged crimes. This factor thus weighs in favor of detention.

Lastly, the Court considers "the nature and seriousness of the danger to any person or the community that would be posed by the [Bruma's] release." 18 U.S.C. §3142(g). The Government contends that he is an economic danger to the community. Bruma responds that he has been housed with other inmates who have been bonded out for crimes involving drugs, guns, and violence. While Bruma's alleged offenses may not be the pinnacle of danger, they do present some concerns for the community. Bruma was allegedly attempting to obtain the credit or debit card information of bank customers to make fraudulent purchases or obtain other's money. While perhaps not presenting much physical danger to the community, there is potential for an economic toll. And even without this factor, the Court would be satisfied that Bruma is a risk of flight based on the evidence against him as well as his history and characteristics.

Apart from these factors, Bruma raises two additional issues—neither of which supports his release from detention. First, he contends that he has already served the high-end of his sentencing guideline range. The Court ordered the United States Probation Officer to make a preliminary guideline calculation which yielded an advisory guideline of 30-37 months' imprisonment. (ECF No. 69). That calculation is somewhat misleading because it added an eight-level increase for the amount of loss. The Government concedes that the exact amount of loss is unknown at this time. The preliminary guidelines calculation notes that "the total amount of loss…is based upon an estimated amount across a number of locations suspected to be affected by the overall scheme." (*Id.*). And if there is indeed no loss, then Bruma's guideline range would be 8-14 months' imprisonment. Bruma has been incarcerated for about 14 months.

9

Even still, the sentencing guidelines are merely advisory. The exact amount of loss is unknown at this time and the Court does not know the full breadth of the "overall scheme" here. (*Id.*). And the Court has authority to sentence Bruma up to the statutory maximum for his charges, or thirty years. The fact that Bruma *might* have served the high-end of his advisory guideline range is not a present basis for his release.

Second, Bruma mentions several grievances and alleged constitutional violations against the Allen County and Noble County Jails which he believes supports his release from detention. Although sympathetic because the facilities' conditions do seem rather foul, such grievances do not provide for the existence of a "condition or combination of conditions of release will reasonably assure [Bruma's] appearance as required." 18 U.S.C. § 3142. Recourse for the constitutional deprivations alleged against the correctional facilities are matters for a civil suit, not a basis for release.

In conclusion, the Court finds that there is no "condition or combination of conditions of release will reasonably assure [Bruma's] appearance as required" by a preponderance of the evidence. *Id.* He has no legal status in the United States and little, if any, connection to this District. Little is known about his finances and associations. And there is significant evidence against him in this case which involves crimes of dishonesty and deception. Bruma thus will remain detained.

**IV. Conclusion**

For these reasons, Bruma's Motion for Release (ECF No. 64) is DENIED.

SO ORDERED on December 5, 2024.

                                                         s/ Holly A. Brady
                                                       CHIEF JUDGE HOLLY A. BRADY
                                                       UNITED STATES DISTRICT COURT