UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 1:23-CR-58-HAB |
| | ) | |
| PETRU-RAZVAN BRUMA, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Defendant Petru-Razvan Bruma ("Bruma") moves to revoke his detention before trial for the second time. (ECF No. 97). As with his previous motion, he contends that he has already served the high-end of the sentencing guideline range for his offenses. (*Id.*; ECF No. 64). The Court previously denied his motion it found that "no 'condition or combination of conditions of release will reasonably assure [Bruma's] appearance as required' by a preponderance of the evidence." (ECF No. 90). Bruma's present motion merely adds that he is subject to an Immigration and Customs Enforcement ("ICE") hold and argues that he will go directly into ICE custody upon release. But even with the ICE hold, the Court is confident that he still poses a flight risk. For the reasons below, Bruma's Motion for release (ECF No. 97) will be DENIED.

**I. Background**

Little has changed since Bruma's previous release request:

> On October 6, 2023, a criminal complaint was filed against Bruma alleging Bank Fraud, in violation of 18 U.S.C. §1344, and Trafficking in a Counterfeit Device, in violation of 18 U.S.C.§1029(a)(4). Following Bruma's arrest and initial appearance, United States Magistrate Judge Susan L. Collins held a detention hearing on October 16, 2023, where she determined that "no condition or combination of conditions of release will reasonably assure [Bruma's] appearance as required." Pursuant to Magistrate Judge Collins' Detention Order, Bruma has remained detained since he was arrested on October 4, 2023.

1

(ECF No. 90 at 1-2).

**II. Legal Standard**

A district court may review a magistrate judge's release or detention order pursuant to 18 U.S.C. § 3145(a). The district court's review is de novo since it must make an independent determination of the proper pretrial detention or conditions for release. *See United States v. Portes*, 786 F.2d 758, 761 (7th Cir. 1985); *see also United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (noting although § 3145 "speaks of 'review' by the district judge, the court may start from scratch"). "[T]his review may be conducted by reviewing the prior record already considered by the magistrate judge and making a fresh finding on a complete record." *United States v. Correa*, 2013 WL 869956, at *3 (C.D. Ill. Mar. 7, 2013) (citing *Torres*, 929 F.2d at 292).

Under the Bail Reform Act of 1984, a defendant may be detained in custody pending trial "[i]f, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "[A] finding of either danger to the community or risk of flight will be sufficient to detain the defendant pending trial." *Portes*, 786 F.2d at 764. The judicial officer's conclusion that no conditions of release can reasonably assure the safety of other persons and the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). The Government must show by a preponderance of the evidence that no conditions will ensure Defendant's appearance in court. *Portes*, 786 F.2d at 765.

In determining whether there are conditions of release which will reasonably assure the appearance of the person as required and the safety of any other person and the community, a district court is to consider the factors set forth in § 3142(g): (1) the nature and circumstances of

2

the offense charged, including whether the offense is a crime of violence or involves narcotics; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. §3142(g). If the judicial officer determines that no release conditions or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Bail Reform Act requires: "[T]he judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

### III. Discussion

Bruma's motion, for the most part, recycles the same arguments he presented in his previous release request. (ECF Nos. 64, 97). And the record has changed little since Bruma's prior request. The Court therefore will rely on its previous findings regarding the factors set forth in § 3142(g) and will address the ICE hold within that analysis.[1] (ECF No. 90). The Court will then tackle Defendant's argument regarding the sentencing guideline—again, a topic that was covered in his previous request. Even with the ICE hold, Bruma's release request will be denied.[2]

As for the first § 3142(g) factor, Bruma is charged with bank fraud and trafficking a shimmer device. Although those crimes do not involve violence or narcotics, they do "raise some concerns insofar as fraud is a crime of deception." (ECF No. 97 at 3). While they may not be indicative of danger to the community—outside of a financial danger—"when assessing the risk of flight, the deceptive nature of his alleged offenses should carry greater weight." (*Id.*). Moreover, it appears Bruma came to Fort Wayne just to place shimming devices, went back to Chicago,

---

[1] As with his prior motion, "[t]he Court has carefully reviewed and considered Bruma's Motion, the Government's Response, the Pretrial Services Report, the criminal complaint, the indictment, the evidence and argument presented at the initial detention hearing, and Magistrate Judge Collins' Detention Order." (ECF No. 90 at 3).

[2] The factual statements made in this Order are based on the allegations contained in the Complaint and the proffers the parties made. Bruma maintains his presumption of innocence.

3

returned to Fort Wayne again to visit the device locations, before heading back toward Chicago. While Bruma was not peddling drugs or physically hurting anybody, his alleged crimes "do demonstrate a propensity toward deception and minimal ties to this District." (*Id.* at 4).

The second factor—the weight of the evidence—also does not weight in Bruma's favor. The Court previously summarized some of the evidence against Bruma:

> Photographic and video evidence shows a suspect that appears to be Bruma at two Flagstar Bank ATMs on October 3, 2023, driving a Chevrolet Malibu bearing a distinct license plate. At both ATMs, the suspect is seen placing shimming devices on the machines and, indeed, a shimming device was recovered from one of the ATMs ("West Jefferson ATM"). Photographic and video evidence shows Bruma return to the West Jefferson ATM the following day—wearing nearly identical clothing and driving the same Malibu as the suspect. Officers pulled the Malibu over as it was leaving Fort Wayne and Bruma was arrested. Bruma was wearing the same hat as the suspect that placed the shimmers the day before and was dressed in similar clothing. Moreover, Bruma possessed the same Visa Card that the suspect inserted in the West Jefferson ATM on October 3, 2023. The suspect on that date placed a red Visa Card into the ATM and bank records show that the card ended in four distinct digits. At Bruma's arrest, officers recovered a red Visa Card baring those digits from his wallet.

(*Id.*). As for the other ATM Bruma visited ("St. Joe ATM"), photographic and video evidence shows him returning to that ATM the following day too. Although Bruma indicates that no shimming device was recovered, the Government proffers recently discovered the device's location and provided pictures of it. (ECF No. 101 at 7-8).

Bruma appears to question the sufficiency of the evidence by arguing "[Bruma's] offense is, at best, an attempt." (ECF No. 97 at 2-3). But as it relates to Count 1, that is all the Government must show. *See* 18 U.S.C. § 1344 ("Whoever knowingly executes, or attempts to execute" to defraud a financial institution commits bank fraud.). And Count 2 only requires that trafficked the shimmer knowingly and with the intent to defraud. *See* 18 U.S.C. § 1029(a)(4) ("Whoever knowingly, and with intent to defraud, produces, traffics in, has control or custody of, or possesses device-making equipment shall, if the offense affects interstate or foreign commerce, be

4

punished[.]"). Even if there is no evidence of data extraction, counterfeit card, or unauthorized withdrawals, the Government need not prove as much to meet their burden. "Bruma can still be liable if the Government proves that he knowingly attempted to accomplish those ends." (ECF No. 90 at 5). That said, the evidence against Bruma remains strong.

The third § 3142(g) factor requires the Court to consider Bruma's history and characteristic. This includes Bruma's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. §3142(g)(3)(A). Bruma has no criminal history, that's true. But that is really all that is known about Bruma. He has no real ties to this District. Indeed, his only tie to this country is a California address he provided to the probation department. Bruma is a Romanian by birth and a citizen of the United Kingdom. And at the time of his arrest, Bruma was here illegally because he had overstayed his visa. Moreover, he declined to discuss his finances with the probation department because "that [was] private information." Bruma's illegal status and lack of any real ties to this District "presents more reasons to flee than most." (ECF No. 90 at 9). The unknown surrounding Bruma partnered deceptive nature of his crimes thus create serious concerns about whether he will appear as required—concerns that weight in favor of detention.

While on the topic of Bruma's illegal status in the United States, the Court will address the ICE hold.[3] The ICE hold does not provide sufficient safeguards to ensure his appearance as required. There is no guarantee, absent a conviction, that Bruma will be placed into ICE custody. Nor is there any guarantee that ICE would have sufficient space to hold Bruma while he awaits

---

[3] The Court has discussed the effects of the ICE hold should Bruma be released with the United States Marshalls Service.

5

trial. Absent those guarantees, the hold fails to alleviate the Court's concern that Bruma is a flight risk.

As for the final § 3142(g) factor, Bruma argues that there is no evidence that he is a danger to any person or the community. And this factor is perhaps a close call. But "while Bruma's alleged offenses may not be the pinnacle of danger, they do present some concerns for the community." (ECF No. 90 at 9). He was allegedly attempting to obtain bank customers' financial information to either obtain funds or make fraudulent purchases. Though perhaps not as imminent or physically dangerous as other crimes, there is the potential for an economic toll to the community. Even so, it matters little. "[W]ithout this factor, the Court would [still] be satisfied that Bruma is a risk of flight based on the evidence against him as well as his history and characteristics." (*Id.*).

Lastly, Bruma contends—as he did in his previous request—that he has already served the high-end of his sentencing guidelines range. Having addressed this issue previously, the Court makes quick work of Bruma's argument:

> [T]he sentencing guidelines are merely advisory. The exact amount of loss is unknown at this time and the Court does not know the full breadth of the "overall scheme" here. And the Court has authority to sentence Bruma up to the statutory maximum for his charges, or thirty years. The fact that Bruma might have served the high-end of his advisory guideline range is not a present basis for his release.

(ECF No. 90 at 10). Such is still the case.

In sum, there is no "condition or combination of conditions of release will reasonably assure [Bruma's] appearance as required" by a preponderance of the evidence. 18 U.S.C. § 3142. Brum has no legal status in the United States and presents little ties to this District apart from his alleged crimes. And he faces strong evidence of those crimes which involves deception and dishonesty. He should thus remain detained.

### IV. Conclusion

6

For these reasons, Bruma's Motion for Release (ECF No. 97) is DENIED.

SO ORDERED on April 8, 2025.

                                             s/ Holly A. Brady
                                            CHIEF JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT